UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: THE GAP, INC., COVID-19
LEASE PAYMENT LITIGATION                                           MDL No. 2960


ORDER DENYING TRANSFER


**Before the Panel**: Tenant movants The Gap, Inc., Old Navy, LLC, Banana Republic, LLC, and Athleta, LLC (together, Gap), move under 28 U.S.C. § 1407 to centralize pretrial proceedings in this litigation in the Northern District of California or, alternatively, the Eastern District of Michigan. The motion encompasses seven actions pending in five districts, as listed on Schedule A.[1]

All responding landlord parties oppose centralization. The responding Michigan landlord plaintiffs alternatively request exclusion if an MDL is formed outside the Eastern District of Michigan. Landlord defendant in the Southern District of New York *Gap* declaratory judgment action alternatively requests exclusion of its action from centralized proceedings or suggests centralization in the Eastern District or Southern District of New York. Landlord plaintiff in the potential tag-along action pending in the District of District of Columbia alternatively suggests centralization in the District of District of Columbia or the Eastern District or Southern District of New York.

On the basis of the papers filed and hearing session held,[2] we conclude that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. These actions involve some factual overlap concerning Gap's decision not to pay rent on its retail leases nationwide on grounds that the business disruption caused by the COVID-19 pandemic frustrated the essential purposes of each of its leases and excused Gap from

---

[1] Gap's motion included 26 additional actions pending in eleven districts, but those actions have either been remanded to state court or voluntarily dismissed. Gap represents that the remaining Northern District of Ohio action included in Schedule A has been settled, but the docket sheet in this action shows it remains pending.

The Panel has been notified of eight potentially-related actions pending in seven districts. One of these cases has been voluntarily dismissed.

[2] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of September 24, 2020. *See* Suppl. Notice of Hearing Session, MDL No. 2960 (J.P.M.L. Sept. 8, 2020), ECF No. 53.

its obligation to pay rent. Gap argues that there will be common fact and expert discovery concerning, *inter alia*, the foreseeability of the pandemic, whether Gap assumed the risk of a pandemic in the leases at issue, custom and practice in the industry on both assumption of risk and foreseeability, the effects of the pandemic on safety and in-person retail shopping, and potential safety measures that retailers may or must employ. Opponents of centralization argue, *inter alia*, that (1) there are no relevant, disputed, common factual questions; (2) to the extent there are any common factual questions, they are overwhelmed by individual factual questions in these actions, which will involve different leases, landlords, properties, and shelter-in-place orders; (3) these are simple landlord/tenant disputes and any common questions of fact are not sufficiently complex to warrant centralization; and (4) several landlords have sought rulings on early summary judgment motions, without the need for discovery.

We agree with opponents that centralization is not necessary or appropriate here. Gap may be correct that these actions will involve some overlapping factual questions and discovery. But the overlap appears to be limited and overshadowed by the many individual questions in each action relating to the unique properties, leases, and negotiating parties at issue. We are not persuaded that centralized proceedings here will serve the convenience of the parties and witnesses— particularly the various landlords.

We also find the recent procedural history of the litigation indicates that centralization "might hinder the orderly and efficient resolution of these cases." *In re JumpSport ,Inc., ('845 & '207) Patent Litig.*, 338 F. Supp. 3d 1356, 1357 (J.P.M.L. 2018). Since Gap filed its motion for centralization, which included 33 actions, 26 of them have been remanded or settled and dismissed. And Gap represents that another action has settled. In the weeks since Gap filed its Section 1407 motion, sixteen actions—almost half of those originally included in the centralization motion—have settled. The earliest actions were filed just six months ago. Thus, these actions have not "required significant judicial attention," and we find that centralization would not promote the just and efficient conduct of the litigation. *In re ArrivalStar S.A. Fleet Mgmt. Sys. Patent Litig.*, 802 F. Supp. 2d 1378, 1379 (J.P.M.L.2011).

Gap argues that additional similar actions are likely to be filed because unresolved rental disputes are pending as to approximately 2,000 leases. But the Panel currently is presented with just seven potential tag-along actions for (according to Gap) a total of thirteen actions, and the Panel is "disinclined to take into account the mere possibility of future filings in our centralization calculus." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013). Moreover, it is unclear how many similar actions already have been filed or will be filed in state court. Indeed, of the 33 actions included in Gap's motion for centralization, eleven have been remanded to state court. Finally, given the trend of quick settlements, it may be that most of these rental disputes are resolved before a lawsuit is filed.

For the actions remaining, it appears that alternatives to centralization—such as informal coordination of any common depositions—can minimize any overlap in pretrial proceedings. It does not appear the parties attempted any informal means of coordination before Gap filed its Section

-3-

1407 motion. Parties should make such an attempt before resorting to Panel intervention. *See, e.g., In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (centralization "should be the last solution after considered review of all other options.") (citation omitted).

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Ellen Segal Huvelle  R. David Proctor
Catherine D. Perry  Nathaniel M. Gorton
Matthew F. Kennelly  David C. Norton

**IN RE: THE GAP, INC., COVID-19**
**LEASE PAYMENT LITIGATION**                                    MDL No. 2960

## SCHEDULE A

<u>Eastern District of Michigan</u>

EQUITY ALLIANCE OF CANTON DEVELOPER PARCEL, LLC v. OLD NAVY, LLC, C.A. No. 2:20-11683
GRAND/SAKWA NEW HOLLAND SHOPPING CENTER, LLC v. OLD NAVY, LLC, C.A. No. 2:20-11686

<u>Western District of Michigan</u>

JADE PIG VENTURES – EGR, LLC v. ATHLETA LLC, C.A. No. 1:20-00664

<u>Southern District of New York</u>

48TH AMERICAS LLC v. THE GAP, INC., C.A. No. 1:20-03471
THE GAP, INC. v. PONTE GADEA NEW YORK LLC, C.A. No. 1:20-04541

<u>Northern District of Ohio</u>

FIRST INTERSTATE AVON, LTD. v. OLD NAVY, LLC, C.A. No. 1:20-01354

<u>District of Vermont</u>

KLEBAN BATTENKILL, LLC v. THE GAP, INC., C.A. No. 5:20-00086